## SHAKEPROOF LOCK WASHER CO. v. THOMPSON–BREMER & CO.

### No. 4987.

Circuit Court of Appeals, Seventh Circuit.

Feb. 13, 1934.

Howard M. Cox and Henry M. Huxley, both of Chicago, Ill., for appellant.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree finding invalid appellant's patent sued on, and dismissing its bill. The bill charged infringement of appellant's Gribbie patent No. 1,697,954, issued January 8, 1929, on application filed October 10, 1925, for an "electric connector." It shows a washer to be inserted between the base of the nut and the face of the work, and so designed that when the nut is firmly set the washer will resist its unscrewing. The washer has an integral shank or extension thereon forming a terminal to which the electric wire is attached. Fig. 3 of the patent shows its preferred form.

The washer has a hole through which the bolt or post passes, and at the inner circumference of the washer there is cut a series of teeth (28) with substantially square ends. These inwardly projecting teeth of the flat metal washer are twisted tortionally so that one corner of each tooth projects upwardly, and the diagonally opposite corner downwardly, from the plane of the washer, whereby when the nut is set the projecting corners of each tooth of the washer will press against and dig into the surfaces which they contact, thereby tending to prevent the nut from becoming unscrewed and loose, and to hold the washer with its shank against movement. Another form is shown with the teeth cut into the outward circumference of the washer.

Appellee contends that if the patent were accorded a range of equivalents sufficiently broad to cover appellee's device the patent would be invalid, but if limited to the structure shown appellee does not infringe. The alleged infringing device is the structure of the Thompson patent, No. 1,775,705, issued 1930 (application May 20, 1929), for a lock washer. Fig. 1 of this patent is:

This shows the washer with shank extension, hole (6) for the passing through of the bolt or post, and there are slits extending back from the inner circumference of the hole with transverse slits cut into the washer at

the ends of the radial slits. Thereupon the tongues so made (8) are projected upwardly and downwardly respectively from the face of the washer, so that when the nut is firmly set there will be presented against the unscrewing thereof the sharp projecting edges, which will have the tendency to impinge or bite into the lower surface of the nut and the upper surface of the work, thus holding the nut against movement as well as the washer with its shank. The operation is essentially the same as in Gribbie.

It will readily be concluded that if the patent sued on were for a pioneer invention it might cover various forms of edges or points which might be raised on such metal washers to resist turning of the nut when once it is set, and would probably include such a structure as appellee's. But it is not contended that the patent in suit covers all metal washers which present resistance to the unscrewing of the contacting nuts; nor, indeed, could such contention well be made in view of the prior art. Murphy patent No. 261,947, 1882, shows a washer with upwardly and downwardly projecting teeth for engaging the lower side of the nut and the upper side of the work for resisting loosening of the nut. Murphy, No. 302,860, 1884, shows a generally similar washer. Hosking, No. 1,419,564, 1922, for a nut lock, shows such a washer with the teeth cut into its outer circumference instead of the inner, and the teeth tortionally twisted as in Gribbie's device. Ammons, No. 997,359, 1911, French patent to Jouanique, No. 349,953, 1905, British patent to Craven, No. 11,837, 1892, and British patent to Lambie, No. 13,819, 1914, show upwardly and downwardly projecting tongues of such a washer for the same purpose. Rich, No. 1,267,695, 1918, for a lock washer, shows a quite similar device.

It is thus apparent that, so far as the washer itself is concerned, when Gribbie entered the field he was in a very crowded art, and as to the washer he would in any event be limited to whatever specific advance he showed.

None of the above-named prior art patents shows a shank or extension integral with the washer. But a shank integral with a washer, for making electrical connection, is likewise old in the art. Patent to Lamm, No. 662,003, 1900, shows a washer with a shank for electrical connection therewith. This washer is not designed to resist unscrewing of the nut, but to provide a more perfect electrical contact. Tingley, No. 956,548, 1910, shows a corrugated washer designed to resist turning of the nut, with an integral shank. Smith, No. 1,428,863, 1922 (Fig. 8), shows a contrivance akin to a washer, which is split on one side, one part raised above the plane of the washer and the other below to afford a spring pressure which would give frictional resistance to the unscrewing of a nut, and with an integral shank for electrical connection. Breaznell, No. 1,092,472, 1914, shows a contrivance having a washer in two parts, which overlap on one side, with lower and upper projection to resist unscrewing of the nut after it is set. It shows also means for separating the parts of the washer so that it may be applied without removing the nut. It has a shank extension for connecting electric wire.

A washer with integral shank employed as an electric terminal was thus old in the art before Gribbie, and it involved no invention to attach a shank for an electrical terminal to any other or different form of washer from such as the prior art showed.

The only possible variance which Gribbie shows from the prior art is in his peculiar twist of the ends of the washer teeth whereby the corners are projected upwardly and downwardly from the plane of the washer, and it is questionable whether even in this respect he shows advance over the prior art. But assuming that in this alone Gribbie shows patentable invention, his patent must be limited to this feature.

Appellee's device, apparently very similar in this respect to Ammons and Smith and some others in the prior art, differs quite substantially therein from Gribbie. Instead of Gribbie's points thrown out for such resistance, appellee's structure presents, not points, but straight edges for contacting and digging into the respective contacting surfaces. It therefore seems plain that in the single feature which alone might perhaps support the Gribbie patent appellee does not infringe.

We are therefore of the view that in this case the decree dismissing the bill should be rested upon appellee's noninfringement rather than upon invalidity of the patent in suit. It is therefore ordered that the cause be remanded to the District Court with direction to revise the decree of the court entered therein by eliminating from it so much thereof as finds the patent invalid, and by dismissing the bill for want of equity because appellee did not infringe the patent sued on. Appellee shall recover its costs of this court.